UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | 22 CR 333 |
| v. ) | |
| ) | Judge John Robert Blakey |
| ALLEN CLAY ) | |

**GOVERNMENT'S POSITION PAPER AS TO
SENTENCING FACTORS**

**I.   INTRODUCTION**

In the early morning hours of April 25, 2022, during the span of only a few hours, defendant Allen Clay and co-defendant Naronn Cain endangered multiple citizens in the city of Chicago. Clay and Cain carjacked two people at gunpoint and then led law enforcement on a high-speed chase before they crashed the car and were apprehended. For the reasons discussed below, the Court should sentence Allen to a total of 117 months' imprisonment (33 months' imprisonment as to Count 1 and 84 months' imprisonment as to Count, with the terms to run consecutively), followed by a three-year term of supervised release.

**II.   BACKGROUND**

   **A.   Offense Conduct**

On April 25, 2022, at approximately 1:27 a.m., Victim A and Victim B parked Victim B's white 2011 Kia Optima by the intersection of West Division Street and North Rockwell Street in Chicago. Believing that he had misplaced his keys, Victim A got out of the car and knelt down by the driver's side door to look for them. Victim B was in the front passenger seat. As Victim A searched for his keys, Clay and Cain

pulled up in a car right next to him. Clay got out of the front-passenger door of the car, pointed a loaded nine-millimeter semiautomatic pistol at Victim A, and said, "Don't move n****r." Cain got out of the backseat and pointed a loaded semiautomatic assault rifle at Victim A. Clay then walked over to the passenger-side door of the Kia Optima, where Victim B was sitting; while pointing the loaded pistol at Victim B, Clay told her, "Get the fuck out of the car." Cain got into the driver seat, Clay got into the front-passenger seat, and the two of them drove away from the scene in the stolen Kia Optima. *See* PSR, ¶¶ 9–13.

Law enforcement was able to locate the stolen Kia Optima because of Air Pods that Victim B had left behind in the car. The Illinois State Police pursued the stolen Kia Optima as Cain and Clay fled at incredibly high and dangerous speeds. They eventually crashed the Kia Optima on 87th Street and then proceeded to flee from law enforcement on foot. The Illinois State Police Field Report is attached as Exhibit 1; videos reflecting the crash and ensuing flight on foot are attached as Exhibit 2 and Exhibit 3. Clay and Cain did not get far and were apprehended in a nearby gas station. *See* PSR, ¶¶ 9–13.

 

*Screenshots from BWC footage of the Kia Optima*

2

### B. Procedural History

On June 29, 2022, Clay and Cain were charged by indictment with carjacking, in violation of Title 18, United States Code, Section 2119 (Count One), and using, carrying, brandishing, and discharging a firearm during and in relation to the carjacking, in violation of Title 18, United States Code, Section 924(c)(1)(A) (Count Two). Dkt. No. 1. In April 2024, Cain pleaded guilty to the indictment. Dkt. 62. On November 8, 2024, the Court sentenced Cain to a total of 125 months' imprisonment (41 months' imprisonment as to Count One and 84 months' imprisonment as to Count Two, with the terms to run consecutively). Dkt. 86. On March 25, 2025, Clay pleaded guilty to the indictment, pursuant to a written plea agreement. Dkt. 94.

## III. GOVERNMENT'S SENTENCING RECOMMENDATION

### A. Sentencing Guidelines

Section 3553(a) requires the Court to impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing. To determine the sentence to impose, the Court must consider the statutory factors listed in Section 3553(a)(1)-(7). One of those factors is the advisory range set by the Sentencing Guidelines. 18 U.S.C. § 3553(a)(4). Although the Sentencing Guidelines are advisory only, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

The Sentencing Guidelines are the sole factor in Section 3553(a) that provides an objective sentencing range that can practicably promote the overall goal of minimizing unwarranted sentencing disparities, which is itself a statutorily

mandated factor. 18 U.S.C. § 3553(a)(6); *see United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005) ("The Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country."). The Supreme Court created the advisory Guidelines system to "continue to move sentencing in Congress' preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individual sentences where necessary." *Booker v. United States*, 543 U.S. 220, 264–65 (2005). The only way to prevent widespread unwarranted disparities is to give serious consideration to the Sentencing Guidelines.

The Sentencing Guidelines also generally deserve serious consideration because they are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall*, 552 U.S. at 46. The Commission is "a respected public body with access to the best knowledge and practices of penology." *United States v. Goldberg*, 491 F.3d 668, 673 (7th Cir. 2007). Furthermore, the Sentencing Commission is charged by statute to periodically review and revise the Guidelines as the Commission collects comments and data from numerous sources in the criminal justice system, 28 U.S.C. § 994(o), and these ongoing efforts to refine the Guidelines are another reason to seriously consider the advisory range.

### B. Sentencing Guidelines Calculation

The government agrees with the Probation Office's calculation of the applicable offense level (19) for Count One and Clay's criminal history category (II), resulting in an applicable Guidelines range of 33 to 41 months' imprisonment for Count One. PSR, ¶¶ 18–41. The mandatory minimum sentence for Count Two is 84 months'

4

imprisonment, which must be imposed consecutively to the sentence imposed on Count One. PSR, ¶¶ 86–87.

### C. Sentencing Factors

Considering the Section 3553(a) factors, including the nature and circumstances of the offense as well as Clay's personal history and characteristics, a total sentence of 117 months' imprisonment is sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, provide a just punishment for the offense, afford adequate deterrence, and protect the public.

Clay's life has been marred by violence. Clay grew up in a neighborhood where he witnessed violence on a regular basis. PSR, ¶¶ 53–54. Clay has been shot at and lost family members and friends to gun violence. *Id*. Clay's own personal experiences with the pain, trauma, and loss that violence brings have not deterred him from inflicting violence on others for his own personal benefit.

Clay committed an incredibly serious offense. Clay and Cain pointed loaded firearms at two people who were just trying to get home so that he and Cain could steal their car. Clay and Cain then proceeded to endanger the lives of countless other people by leading the police on a high-speed chase that ended when they crashed the stolen car. Clay's callous disregard for the lives and wellbeing of the people who live and work in our community is disconcerting. The sentence imposed must reflect, and provide a just punishment for, the dangerous nature of Clay's conduct.

Despite his young age, this is not Clay's first encounter with the criminal justice system. In 2018, Clay was arrested for failing to report an accident involving personal injury; in November 2021, Clay pleaded guilty and was sentenced to 12

5

months' probation in the Circuit Court of Lake County. PSR, ¶ 37. Clay advised the Probation Officer that he had been driving a car without a license that, purportedly unbeknownst to him, had been stolen; Clay then proceeded to flee from the police and crash the stolen car because the police "spooked him" when they activated their emergency lights. *Id*.

While that case was pending, in September 2021, Clay was arrested for the aggravated unlawful use of a weapon. PSR, ¶ 38. According to police reports, Clay fled from the front-passenger seat of car that had been stopped for a traffic violation. *Id*. The police apprehended Clay and recovered a Glock handgun under Clay's seat. *Id*. Clay advised the Probation Officer that his co-defendant, Cain, was driving the car and that he fled from the car when they were stopped by the police because he was not certain if the car had been stolen; Clay claimed that he did not know there was a gun under his seat. *Id*. Despite what he told the Probation Officer, in November 2021, Clay pleaded guilty to the aggravated unlawful use of a weapon in the Circuit Court of Cook County and received another sentence of probation. *Id*. Clay proceeded to commit the armed carjacking offense while on probation. *Id*. Clearly, Clay's prior contacts with the criminal justice system have not deterred him from committing serious, violent crime in our community.

The nature and circumstances of the offense, as well as Clay's personal history and characteristics, weigh in favor of a within-Guidelines sentence of imprisonment. Armed carjacking offenses are serious crimes that affect the residents of the Northern District of Illinois—especially those who live and work in the Chicagoland area—and

6

cripple people's sense of safety in going about their daily lives in our community. *See United States v. Hendrix*, No. 21-3287, 2023 WL 4714727, at *6 (7th Cir. July 25, 2023) ("[W]e repeatedly have held that district courts may consider the serious problem of gun violence in Chicago in imposing stiff sentences on those who commit firearms offenses in the city."); *see also United States v. Hatch*, 909 F.3d 872, 875 (7th Cir. 2018) (affirming an above-Guidelines sentence where the court "situated [the defendant's] offense against … observations about widespread gun violence in Chicago"). Owing to Clay's age and absence of prior time spent in prison, the government believes that a sentence at the low-end of the Guidelines range on Count One is appropriate, in conjunction with the consecutive, mandatory minimum 84-month term of imprisonment on Count Two.

### D. Restitution

In sentencing Cain, the Court ordered that he pay restitution in the amount of $1,325 to Victim B, whose vehicle was stolen and wrecked, and $3,000 to Allstate Insurance Company, jointly and severally with Clay. Dkt. 86; *see also* Dkt. 81 ("Government's Supplemental Sentencing Brief Regarding Restitution"). The Court should impose the same restitution order here.

### E. Supervised Release

Following his release from custody, Clay should be placed on a three-year term of supervised release. While Clay is on supervised release, mandatory conditions 1, 2, 5, and 6 should be applied. To facilitate supervision by the Probation Office and, thereby, encourage Clay's compliance with the law and deter him from committing future crimes, discretionary conditions 14, 15, 16, 17, 18, and 24 should be applied.

7

To ensure that Clay is behaving responsibly while on supervised release and, thereby, support his rehabilitation and reintegration into the community, discretionary conditions 1, 4, 6, and 7, as well as special condition 2, 3, 5, 6, 7, and 10, should be applied. Lastly, to protect the public, including the Probation Officer, discretionary condition 8 and special condition 11 should be applied.

## IV. CONCLUSION

For the foregoing reasons, the government requests that the Court sentence Clay to 117 months' imprisonment, followed by a three-year term of supervised release.

                                        Respectfully submitted,

                                        ANDREW S. BOUTROS
                                        United States Attorney

By:   /s/ *Jared Jodrey*
        JARED JODREY
        Assistant United States Attorney
        United States Attorney's Office
        219 S. Dearborn Street, 5th Floor
        Chicago, Illinois 60604
        312-353-5300